751 A.2d 1032

RAYMOND ABBOTT, A MINOR, BY HIS GUARDIAN AD LITEM, FRANCES ABBOTT; ARLENE FIGUEROA, FRANCES FIGUEROA, HECTOR FIGUEROA, ORLANDO FIGUEROA AND VIVIAN FIGUEROA, MINORS, BY THEIR GUARDIAN AD LITEM, BLANCA FIGUEROA; MICHAEL HADLEY, A MINOR, BY HIS GUARDIAN AD LITEM, LOLA MOORE; HENRY STEVENS, JR., A MINOR, BY HIS GUARDIAN AD LITEM, HENRY STEVENS, SR.; CAROLINE JAMES AND JERMAINE JAMES, MINORS, BY THEIR GUARDIAN AD LITEM, MATTIE JAMES; DORIAN WAITERS AND KHUDAYJA WAITERS, MINORS, BY THEIR GUARDIAN AD LITEM, LYNN WAITERS; CHRISTINA KNOWLES, DANIEL KNOWLES, AND GUY KNOWLES, JR., MINORS, BY THEIR GUARDIAN AD LITEM, GUY KNOWLES, SR.; LIANA DIAZ, A MINOR, BY HER GUARDIAN AD LITEM, LUCILA DIAZ; AISHA HARGROVE AND ZAKIA HARGROVE, MINORS, BY THEIR GUARDIAN AD LITEM, PATRICIA WATSON; AND LAMAR STEPHENS AND LESLIE STEPHENS, MINORS, BY THEIR GUARDIAN AD LITEM, EDDIE STEPHENS, PLAINTIFFS-RESPONDENTS, v. FRED G. BURKE, COMMISSIONER OF EDUCATION; EDWARD G. HOFGESANG, NEW JERSEY DIRECTOR OF BUDGET AND ACCOUNTING; CLIFFORD A. GOLDMAN, NEW JERSEY STATE TREASURER; AND NEW JERSEY STATE BOARD OF EDUCATION, DEFENDANTS-RESPONDENTS, AND JACK COLLINS, IN HIS OFFICIAL CAPACITY AS SPEAKER OF THE GENERAL ASSEMBLY, INTERVENOR-MOVANT.

Submitted April 27, 2000—Decided May 25, 2000.

*Ellis I. Medoway* submitted a brief on behalf of intervenor-movant (*Archer & Greiner,* attorneys; *George F. Kugler, Jr.,* of counsel, *Mr. Medoway* and *Arthur H. Jones, Jr.,* on the brief).

*David G. Sciarra,* Executive Director, Education Law Center, submitted a brief on behalf of plaintiffs-respondents (*Mr. Sciarra,* attorney; *Mr. Sciarra* and *Paul L. Tractenberg* on the brief).

*Nancy Kaplen,* Assistant Attorney General, submitted a letter in lieu of brief on behalf of defendants-respondents (*John J. Farmer, Jr.,* Attorney General of New Jersey, attorney).

*Douglas S. Eakeley* submitted a brief on behalf of *amicus curiae* The League of Women Voters of New Jersey (*Lowenstein*

*Sandler,* attorneys; *Mr. Eakeley* and *James Creighton Drury,* on the brief).

*Joseph Charles, Jr.,* submitted a brief on behalf of *amicus curiae* New Jersey Legislative Black and Latino Caucus.

PER CURIAM.

This matter comes before the Court on motion made by the Speaker of the General Assembly, Jack Collins, to intervene in and seek clarification of our prior opinion in *Abbott v. Burke,* 153 *N.J.* 480, 710 *A.2d* 450 (1998) (*Abbott V*). The Speaker asks whether this Court in *Abbott V* required the State to provide the full costs of school construction in the Abbott districts or whether, instead, the Legislature can require a district to contribute a fair share of local aid based on the district's ability to pay. In light of the Speaker's earlier participation in *Abbott V,* the Court by this opinion grants Mr. Collins's request for intervention and clarification at this time.

I

*Abbott V* was decided on May 21, 1998. Our decision followed seventeen days of remand proceedings regarding proposals for educational reform and facilities improvements for the Abbott districts. *See Abbott V, supra,* 153 *N.J.* at 492–93, 710 *A.2d* 450 (describing remand proceedings). Upon the filing of a report and recommendations by the remand judge on January 22, 1998, Speaker Collins and Senate President Donald DiFrancesco submitted a letter to the Court on February 26, 1998, "to express [their] views regarding the recent school funding recommendations submitted ... by Superior Court Judge Michael Patrick King." In their letter the Speaker and the Senate President presented argument in respect of the costs of programs such as preschool, after-school and summer programs, and school-based health and social services. The letter did not address facilities funding, although at the remand hearing the Commissioner of Education had provided a comprehensive facilities plan, including

full funding by the State, and Judge King's report had discussed facilities needs. After consideration of the parties' arguments, we issued our decision in *Abbott V*, in which we ordered that "[p]lans and enrollment projections [for facilities in the Abbott districts] ... be completed by January 1999, and architectural blueprints ... be completed by the fall of that year." *Abbott V, supra,* 153 *N.J.* at 521, 710 *A.*2d 450. We expected "[c]onstruction [to] begin by the spring of 2000." *Ibid.*

It is now "the spring of 2000." Despite the lateness of the hour, because Mr. Collins participated in *Abbott V*, and out of deference to the constitutional branches of government, the Court grants the Speaker's motion to intervene. *Cf. In re Karcher,* 97 *N.J.* 483, 479 *A.*2d 403 (1984) (granting Speaker standing to contest line-item veto); *In re Forsythe,* 91 *N.J.* 141, 450 *A.*2d 499 (1982) (permitting intervention by Speaker in pending matter of congressional redistricting amendment). The Court recognizes that the issues raised in the Speaker's motion are significant and appropriate for direct consideration.

## II

In *Abbott V* the Court stated:

> The State's proposal is based on the premise that the State will fund 100% of "approved costs." After oral argument the State submitted to the Court its "master funding formula" for determining which costs will be approved. We conclude that any funding formula that does not fund the complete cost of remediating the infrastructure and life cycle deficiencies that have been identified in the Abbott districts or that does not fully fund the construction of any new classrooms needed to correct capacity deficiencies will not comport with the State's constitutional mandate to provide facilities adequate to ensure a thorough and efficient education.
>
> [*Abbott V, supra,* 153 *N.J.* at 524, 710 *A.*2d 450.]

Because there was some concern that the Commissioner's proposal to fund 100% of the "approved costs" [1] had been submitted to the

---

1 "Approved costs" refers to the amount of money that the district and the State determine is necessary for "each district's individualized need for instruc-

Court only after oral argument by way of a "master funding formula," the Court emphasized that "any formula" the State used would have to provide all of the monies necessary to "fund the complete cost" of the "identified" remediation and "needed" construction. *Abbott V, supra,* 153 *N.J.* at 524, 710 *A.*2d 450. The issue was not whether the State was to pay fully for those costs, but rather, what specifically was required to meet the "State's constitutional mandate to provide facilities adequate to ensure a thorough and efficient education." *Ibid.*

In context, considering the evidence adduced before Judge King and the discussion in *Abbott V,* the Court's directive is clear. The State is required to fund all of the costs of necessary facilities remediation and construction in the Abbott districts.

## III

■ The Speaker also has questioned whether the complete costs of facilities funding must be provided for Abbott districts that have experienced changed circumstances since the beginning of this litigation. In his certification to the Court, he points to the City of Hoboken, by way of example, as a municipality that "has become property and income rich" with wealth ratios now stronger than towns such as Oradell, Rockaway, Cherry Hill, and Moorestown, which are among the "wealthiest in the State."

*Abbott v. Burke,* 119 *N.J.* 287, 334–57, 575 *A.*2d 359 (1990) (*Abbott II* ), describes the genesis and development of the State's classification of school districts and the bases on which the Court concluded that twenty-eight poorer school districts were to be included in the group to which the Abbott remedies applied. *See also id.* at 338–45, 575 *A.*2d 359 (explaining methods for classifying districts into District Factor Groups and "urban aid districts"); *see also id.* at 342 n. 18, 575 *A.*2d 359 (clarifying dichotomy of "urban districts," "poorer urban districts," and Abbott Districts).

---

tional space." *Abbott V, supra,* 153 *N.J.* at 521, 710 *A.*2d 450. See discussion of the "Five–Year Facilities Management Plan." *Ibid.*

The appendix attached to *Abbott II* identified the twenty-eight districts that were included in the Court's remedy because they exhibited characteristics evidencing special needs. *Id.* at 394–97, 575 *A.*2d 359 (Appendix).[2]

Subsequently, in response to questions raised by the Plainfield City and Neptune Township school districts, the Court reaffirmed the authority of the legislative and executive branches to include other districts seeking to be classified as Abbott districts. *Abbott v. Burke,* 149 *N.J.* 145, 200 n. 37, 693 *A.*2d 417 (1997) ("We have specifically left it 'to the Legislature, the [State] Board and the Commissioner to determine which districts are "poorer urban districts." ' " (alteration in original)). We held further that districts disputing their "classification may challenge that determination before the Commissioner." *Ibid.* Today, the Abbott Districts include the twenty-eight districts identified in *Abbott II,* along with Neptune and Plainfield, which were added by *L.* 1999, *c.* 110.[3] *See N.J.A.C.* 6:19A–1.2.

Whether the Legislature can remove a school district from its designation as an Abbott district has not before been specifically considered by the Court. The addition of districts, *e.g.,* Neptune and Plainfield, that meet the criteria for Abbott classification certainly suggests that in the happy circumstance in which a district no longer can claim it is "typical of poorer urban districts,"

---

[2] We observe that Atlantic City was "omit[ted] ... since its tax base for 1989–90[was] far in excess of the statutory guaranteed tax base." *Id.* at 386, 575 *A.*2d 359.

[3] The Senate Budget and Appropriations Committee Statement to the bill designating Plainfield City and Neptune Township as Abbott districts noted:

The principal effects of redesignating the two districts as Abbott districts will be to (1) qualify them for Parity Remedy State Aid as required under the decision of the New Jersey Supreme Court in ... *Abbott IV* and (2) make them eligible under ... *Abbott V* ... *for 100% State funding of facilities improvements* and for any additional funding as may be necessary to implement pre-school and other programs required by the Court.

[Senate Budget and Appropriations Committee, *Statement to Senate Bill No. 806,* November 23, 1998 (emphasis added).]

*Abbott II, supra,* 119 *N.J.* at 346 n. 21, 575 *A.2d* 359, it could be removed by the Legislature from the Abbott classification. We affirm that principle. When a district no longer possesses the requisite characteristics for Abbott district status, *id.* at 338–45, 575 *A.2d* 359, the Legislature, the State Board and the Commissioner may take appropriate action in respect of that district.

## IV

For the reasons set forth in this opinion the motion for intervention and clarification submitted by the Speaker of the General Assembly, Jack Collins, is granted. Based on the Court's directive in *Abbott V,* the State is required to fund all the costs of necessary facilities remediation and construction in the Abbott districts.

*Granted*—Chief Justice PORITZ and Justices O'HERN, STEIN, COLEMAN and LONG—5.

*Opposed*—None.