843 A.2d 338

MILLVILLE BOARD OF EDUCATION, APPELLANT,
v. NEW JERSEY DEPARTMENT OF
EDUCATION, RESPONDENT.

BOARD OF EDUCATION OF PEMBERTON TOWNSHIP,
APPELLANT, v. NEW JERSEY DEPARTMENT OF
EDUCATION, RESPONDENT.

PHILLIPSBURG BOARD OF EDUCATION, APPELLANT, v. NEW
JERSEY DEPARTMENT OF EDUCATION, RESPONDENT.

NEPTUNE TOWNSHIP BOARD OF EDUCATION, APPELLANT,
v. NEW JERSEY DEPARTMENT OF EDUCATION,
RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued February 10, 2004—Decided March 12, 2004.

418

Before Judges SKILLMAN, WELLS and FISHER.

*Richard E. Shapiro* argued the cause for appellants, Board of Education of Pemberton Township, Phillipsburg Board of Education and Neptune Township Board of Education.

*Robinson & Andujar,* attorneys for appellant, Millville Board of Education (*Arnold Robinson,* on the brief).

*Michele Lyn Miller,* Deputy Attorney General argued the cause for respondent (*Peter C. Harvey,* Attorney General; *Nancy Kaplen,* Assistant Attorney General, of counsel; *Kimberly Lake Franklin and Michael C. Walters,* Deputy Attorneys General, on the brief).

The opinion of the court was delivered by

FISHER, J.A.D.

These consolidated appeals require this court to consider whether preschool programs required by *Abbott v. Burke,* 153 *N.J.* 480, 710 *A.*2d 450 (1998) (*Abbott V*) must be funded exclusively by the State. The Commissioner of Education concluded that neither the Supreme Court's mandating of preschool programs in *Abbott V,* nor the Appropriations Act for Fiscal Year 2004, *L.* 2003, *c.* 122, requires exclusive State funding. Instead, the Commissioner determined that the Supreme Court has only directed that he "ensure" that there be adequate funding for these programs, thus permitting the utilization of local district funds. We agree with the Commissioner and affirm.

I

Funding for preschool education in the Abbott districts starts with the approval by the Department of Education (DOE) of a budget based on the district's demonstrated need. The DOE then calculates the State aid available. The two components of State aid for preschool are Early Childhood Program Aid (ECPA) and Abbott Preschool Expansion Aid (PSEA). ECPA is based upon a

formula contained in *N.J.S.A.* 18A:7F–16, while PSEA is the amount obtained by subtracting the 2002–03 approved preschool plan from the 2003–04 approved plan. The difference between the approved budget for the 2003–04 preschool plan for these districts, and the ECPA and PSEA State aid components, constitute the funds at issue in these matters.[1]

Each of the appellants filed appeals challenging the DOE's calculation of their PSEA awards for the year 2003–04. The appeal of the Phillipsburg Board of Education (Phillipsburg) was the first of these four matters to reach disposition. The Administrative Law Judge (ALJ) rendered a summary decision, determining that the DOE correctly calculated the PSEA due Phillipsburg. The ALJ, however, also found that because the combination of PSEA and ECPA was insufficient to fund the entire approved preschool budget, the State was required to provide the shortfall.

The other Abbott districts—Pemberton, Millville and Neptune—agreed to stipulate to the essential facts and relied on the arguments raised and considered in the Phillipsburg matter. The ALJs in those matters reached similar results, thus collectively imposing upon the State the obligation to fund the shortfall in each of these districts, namely, $835,034 in Phillipsburg, $424,569 in Pemberton, $1,763,866 in Millville, and $3,768,176 in Neptune.

The DOE filed an appeal with the Commissioner of Education who, in final decisions rendered in each matter on September 25, 2003, rejected the ALJ's conclusions that the State was obligated to exclusively fund these shortfalls. The Commissioner explained that

"[F]ull funding" of Abbott preschool programs cannot be viewed as promises or expectations of dollar-for-dollar State funding regardless of resources available in the local district budget. Rather, they must be understood as reflections of the Department's commitment, and recognition of its obligation, to provide or secure

---

[1] In the Appropriations Act for Fiscal Year 2003, *L.* 2002, *c.* 38, the Legislature provided PSEA in the total amount of $142,400,000. The Appropriations Act for Fiscal Year 2004 provided the same amount, *L.* 2003, *c.* 122, even though only $112,400,000 of the 2003 PSEA was expended.

additional State funds to the full degree necessary to support approved programs where local budgetary resources, including formula aids, local levies and monies realized through economies, efficiencies and reallocations, are found inadequate for this purpose.

Because the Commissioner concluded that the fulfillment of his obligation to "ensure" adequate funding for preschool in the Abbott districts permitted the allocation of local tax levies and other local budgetary resources to those purposes, these four Abbott districts seek our review of the Commissioner's decision.

Since the parties do not further dispute the PSEA calculations, the sole question before this court is whether the Commissioner may look to the district's funds, in whole or in part, to bear the shortfall or whether, as the Abbott districts argue, the burden for the payment of these funds rests exclusively upon the State. Resolution of this issue turns on an understanding of the Supreme Court's prior holdings and the Appropriations Act for Fiscal Year 2004, *L.* 2003, *c.* 122 (the Appropriations Act).

## II

In considering whether the Court's prior decisions require the State to bear alone the shortfall existing after the application of the PSEA and ECPA components, we start with the recognition that the constitutional mandate that the "Legislature shall provide for the maintenance and support of a thorough and efficient system of free public schools" is expressly limited to "the instruction of all the children in the State between the ages of five and eighteen years." *N.J. Const.* art. VIII, § 4, ¶ 1. Since the issue presented involves the extent of State funding for the education of three- and four-year olds in the Abbott districts, an area of education arguably beyond the scope of the constitutional mandate, we are required to carefully examine the Court's mandate in *Abbott V* and the backdrop against which it was rendered.

Holding that the Legislature had failed to remedy the constitutional violations previously found with regard to the thorough and efficient education promised by the State for children between the

ages of five and eighteen,[2] the Court in *Abbott v. Burke,* 149 *N.J.* 145, 693 *A.*2d 417 (1997) (*Abbott IV*) remanded the matter to the Chancery Division, and temporarily assigned Judge Michael Patrick King, P.J.A.D., to the Chancery Division, to examine potential remedies. Adhering to the Supreme Court's mandate, the Commissioner provided his recommendations to Judge King.

The Commissioner proposed that "whole-school reform" be adopted in the Abbott districts. Whole-school reform constitutes "a comprehensive approach to education that fundamentally alters the way in which decisions about education are made." *Abbott V, supra,* 153 *N.J.* at 494, 710 *A.*2d 450. In following Judge King's recommendations in this regard, the Court acknowledged that, in his own recommendations, the Commissioner had clearly set his sights on meeting the "State's strong commitment to implementing whole-school reform," *id.* at 497, 710 *A.*2d 450, an approach which

integrat[es] reform throughout the school as a total institution rather than by simply adding reforms piecemeal. If carried out successfully, whole-school reform affects the culture of the entire school, including instruction, curriculum, and assessment. The reform covers education from the earliest levels, including pre-school, and can be particularly effective in enabling the disadvantaged children in poor urban communities to reach higher educational standards.

[*Id.* at 494, 710 *A.*2d 450.]

The Court emphasized that "early childhood education is essential for children" in the Abbott districts. *Id.* at 502, 710 *A.*2d 450. Because early childhood education formed "an integral component of whole-school reform," and considering also that the parties had expressed "no fundamental disagreement over the importance of pre-school education," [3] the Court required the systematic imple-

---

2 In *Abbott IV*, the Court held the Comprehensive Education Improvement and Financing Act (CEIFA), *N.J.S.A.* 18A:7F–1 to –34, to be unconstitutional, finding that CEIFA did not assure funding parity with the wealthier districts and failed to fully provide for the special needs of Abbott students. 149 *N.J.* at 176–77, 185–86, 693 *A.*2d 417. *See Abbott V, supra,* 153 *N.J.* at 492, 710 *A.*2d 450.

3 The Court also observed that in enacting CEIFA, the Legislature had "recognized the necessity of early childhood education for three- and four-year olds in the poorest school districts." *Abbott V, supra,* 153 *N.J.* at 505, 710 *A.*2d 450.

mentation of whole-school reform in the Abbott districts, *id.* at 502–03, 710 *A.*2d 450, and set forth "the remedial measures that must be implemented in order to ensure that public school children from the poorest urban communities receive the educational entitlements that the Constitution guarantees them," *id.* at 489, 710 *A.*2d 450.

In requiring this and the other remedies enunciated in *Abbott V,* the Court left unresolved the question of whether the constitutional guarantee encompasses a thorough and efficient pre-school education for children ages three and four, but concluded that it was "convinced" that preschool was essential for preparing children for the education promised by our Constitution upon their reaching the age of five:

> This Court is convinced that pre-school for three- and four-year olds will have a significant and substantial positive impact on academic achievement in both early and later school years. As the experts described, the long-term benefits amply justify this investment. Also, the evidence strongly supports the conclusion that, in the poor urban school districts, the earlier children start pre-school, the better prepared they are to face the challenges of kindergarten and first grade. It is this year-to-year improvement that is a critical condition for the attainment of a thorough and efficient education once a child enters regular public school.
>
> Stated conversely, because the absence of such early educational intervention deleteriously undermines educational performance once the child enters public school, the provision of pre-school education also has strong constitutional underpinning.

[*Id.* at 506–07, 710 *A.*2d 450.]

Thus, while recognizing a link between preschool education and the thorough and efficient education of children between the ages of five and eighteen, the Court did not reach the constitutional issue. *Ibid.* Instead, the Court concluded that the requirement that preschool be made available in the Abbott districts was a remedy necessarily imposed to redress the prior constitutional deprivation of a thorough and efficient education for children in the Abbott districts upon reaching the age of five. *Id.* at 489, 710 *A.*2d 450. In short, the Court crafted its requirement that preschool education be provided in the Abbott districts as "a remedial measure that can create the opportunity to achieve a thorough and efficient education." *Id.* at 501, 710 *A.*2d 450.

424

Since we are satisfied that the Court's *Abbott* holdings do not include a mandate for the exclusive state funding of preschool, we likewise need not consider whether the scope of the thorough and efficient education clause extends beyond its stated age boundaries, particularly when contemplating the enormity of such a holding beyond the Abbott districts.

### III

We conclude, as did the Commissioner, that the adoption of whole-school reform, with its inclusion of preschool education in the Abbott districts, was designed by the Court as a remedy for the past constitutional deprivation of a thorough and efficient education for children between the ages of five and eighteen in the Abbott districts. In so recognizing the nature of *Abbott V's* mandate, and in comparing that mandate with others rendered by the Court in this context, we also conclude that the Court did not intend to require exclusive state funding of preschool in the Abbott districts.

In this vein, we observe that the Court has chosen quite emphatic language when exclusive State funding was intended. *See Abbott V, supra,* 153 *N.J.* at 524, 710 *A.*2d 450 ("We conclude that any funding formula that does not fund the complete cost of remediating the infrastructure and life cycle deficiencies that have been identified in the Abbott districts or that does not fully fund the construction of any new classrooms needed to correct capacity deficiencies will not comport with the State's constitutional mandate to provide facilities adequate to ensure a thorough and efficient education."); *Abbott v. Burke,* 164 *N.J.* 84, 88, 751 *A.*2d 1032 (2000) (*Abbott VIII*) ("The State is required to fund all of the costs of necessary facilities remediation and construction in the Abbott districts.").

■ Here, in requiring preschool programs in the Abbott districts to remediate the prior deprivation of the constitutional right to a thorough and efficient education for children between the ages of five and eighteen, the Court's directives take on a less mandatory tone. Instead of compelling State funding for the

implementation of all preschool programs included within whole-school reform, the Court simply imposed an obligation on the Commissioner to "ensure" that such funding is provided:

> In directing the implementation of pre-school programs in the Abbott schools, the Commissioner *must ensure* that such programs are adequately funded *and assist* the schools in meeting the need for transportation and other services, support, and resources related to such programs. The Commissioner may authorize cooperation with or the use of existing early childhood and day-care programs in the community.
>
> [*Abbott V, supra,* 153 *N.J.* at 508, 710 *A.*2d 450 (emphasis added).]

It is the Court's direction in *Abbott V* that the Commissioner "ensure" and "assist" which has informed the Commissioner's decision, and our affirmance of that decision, that other resources, including funds existing at the district level, may be allocated for these purposes.

In pursuing the difficult question put to us as to how we should consider the Supreme Court's holding in *Abbott V* regarding the funding of preschool programs in the Abbott districts, we further observe that we do not view the present dispute as exalting the grammatical or syntactical form of the Court's words over the substance of what the Court intended to convey. Instead, in light of the Court's clarification of *Abbott V* in *Abbott v. Burke,* 163 *N.J.* 95, 104, 748 *A.*2d 82 (2000) (*Abbott VI*), we can rest assured that the Court meant precisely what it said since the Court, in clarifying the Commissioner's obligations, simply reiterated the passage from *Abbott V* which we quoted above.

Accordingly, in answering the single question posed by this appeal, we follow the Court's prior holdings and conclude that the Court has only directed the Commissioner to "ensure" and "assist" in the "adequate funding" of preschool programs in the Abbott districts. We are satisfied that the Court's wording of this obligation—particularly when viewed against the Court's determination not to declare that a preschool education is constitutionally mandated—falls significantly short of requiring exclusive State funding for preschool programs in the Abbott districts.[4]

---

[4] We also reject the Abbott districts' contention that the following general comment made by the assistant commissioner, in a letter advising of various

## IV

■ We also agree with the Commissioner that the Appropriations Act does not contain an obligation to fund any aspects of preschool education in the Abbott districts other than through the funding which comes from PSEA and ECPA. The Abbott districts argue that the Governor's 2004 Budget Message illuminates the legislative intent to exclusively fund all preschool aspects of whole-school reform. While we acknowledge that the comments of a governor may be considered in ascertaining the intent underlying particular legislation, *State v. Sutton*, 132 *N.J.* 471, 483, 625 *A.2d* 1132 (1993), we conclude that the Appropriations Act which the Legislature ultimately enacted deliberately limited the scope of funding which the Governor's message appears to have proposed.

In urging the significance of the Budget Message, plaintiffs rely specifically upon the Governor's following statement:

> The amount appropriated hereinabove for Additional *Abbott v. Burke* State Aid will provide additional resources to "Abbott districts" to meet the State's obligation to fully fund parity *and the approved early childhood operational plans.*
> [emphasis added.]

The legislation proposed at the time of the Governor's Budget Message expressed in the same way the scope of funding available for preschool education in Abbott districts. However, the Legislature modified the relevant provision so that instead of stating its intent to provide "additional resources ... to meet the State's obligation to fully fund ... *the approved early childhood operational plans*," the Legislature stated that it was providing "additional resources ... to meet the State's obligation to fully fund ... *approved 'Abbott' preschool expansion.*" (emphasis added). This modification presents little question but that the Legislature in-

---

aspects of state funding, prohibited the Commissioner from rendering the decision now under review: "The state will meet its obligation to fully fund parity and preschool programs for Abbott districts." Much of what followed in that letter undercut the significance of this comment. Moreover, we fail to see how the Commissioner would be bound to comply with such a general statement in the particular context in which it was rendered.

tended to limit State funding to PSEA, ECPA and the funding for facilities remediation and construction compelled by the Supreme Court's decision in *Abbott v. Burke*, 164 *N.J.* 84, 88, 751 *A.*2d 1032 (2000) (*Abbott VII*).

Accordingly, we conclude that the Appropriations Act does not contain any provision for the State's exclusive funding of all aspects of preschool education in the Abbott districts.

## V

Since the Supreme Court has not mandated exclusive State funding for all aspects of preschool education in the Abbott districts and since the Legislature has not provided for the funding of preschool beyond the funding components of PSEA and ECPA, we agree with the Commissioner's determination that the State is not mandated to exclusively fund preschool in the Abbott districts and that local resources, if available, may be allocated for such purposes.

Affirmed.