832 A.2d 891

RAYMOND ARTHUR ABBOTT, A MINOR, BY HIS GUARDIAN AD LITEM, FRANCES ABBOTT; ARLENE FIGUEROA, FRANCES FIGUEROA, HECTOR FIGUEROA, ORLANDO FIGUEROA AND VIVIAN FIGUEROA, MINORS, BY THEIR GUARDIAN AD LITEM, BLANCA FIGUEROA; MICHAEL HADLEY, A MINOR, BY HIS GUARDIAN AD LITEM, LOLA MOORE; HENRY STEVENS, JR., A MINOR, BY HIS GUARDIAN AD LITEM, HENRY STEVENS, SR.; CAROLINE JAMES AND JERMAINE JAMES, MINORS, BY THEIR GUARDIAN AD LITEM, MATTIE JAMES; DORIAN WAITERS AND KHUDAYJA WAITERS, MINORS, BY THEIR GUARDIAN AD LITEM, LYNN WAITERS; CHRISTINA KNOWLES, DANIEL KNOWLES, AND GUY KNOWLES, JR., MINORS, BY THEIR GUARDIAN AD LITEM, GUY KNOWLES, SR.; LIANA DIAZ, A MINOR, BY HER GUARDIAN AD LITEM, LUCILA DIAZ; AISHA HARGROVE AND ZAKIA HARGROVE, MINORS, BY THEIR GUARDIAN AD LITEM, PATRICIA WATSON; AND LAMAR STEPHENS AND LESLIE STEPHENS, MINORS, BY THEIR GUARDIAN AD LITEM, EDDIE STEPHENS, PLAINTIFFS–MOVANTS, v. FRED G. BURKE, COMMISSIONER OF EDUCATION; EDWARD G. HOFGESANG, NEW JERSEY DIRECTOR OF BUDGET AND ACCOUNTING; CLIFFORD A. GOLDMAN, NEW JERSEY STATE TREASURER; AND NEW JERSEY STATE BOARD OF EDUCATION, DEFENDANTS–RESPONDENTS.

June 24, 2003.

### ORDER

The within matter having been initiated by the Attorney General on behalf of the Department of Education (DOE or Department) on motion for modification of the decision in *Abbott v. Burke,* 153 *N.J.* 480, 710 *A.*2d 450 (1998) (*Abbott V*);

And the Supreme Court having duly considered that motion (M–976);

And the Court also having considered the cross-motions filed by the Education Law Center (ELC) for an order setting forth an expedited schedule in respect of decisions on district budgets and requiring the DOE to conduct a formal evaluation of the implementation of Whole School Reform (WSR), and for counsel fees (M–996/997);

And the Court having ordered on April 29, 2003, that the ELC and the DOE participate in mediation for the purpose of resolving the issues raised by the parties in their motion and cross-motion;

And the Court having ordered that Superior Court, Appellate Division, Judge Philip S. Carchman, be appointed to serve as mediator for the sole purpose of resolving the issues raised in defendants' motion and the cross-motion of plaintiffs;

And the Court having further ordered that mediation be completed by May 30, 2003;

And the Court having further ordered that Judge Carchman report specifically on all areas of agreement and on any areas on which agreement could not be reached;

And the Court having been advised by Judge Carchman that the parties have complied with the Court's Order and have participated in mediation over a three-week period consisting of telephone conferences, the exchange of proposals and counter-proposals and eight full-day mediation sessions;

And the Court having been further advised by Judge Carchman that the participants in mediation included David G. Sciarra, Esq., Executive Director of the ELC; Steven G. Block, Director of School Reform Initiatives for the ELC; Nancy Kaplen, Esq., Assistant Attorney General; Michelle Lynn Miller, Esq., Senior Deputy Attorney General; Hon. William L. Librera, Commissioner of Education (Commissioner); Gordon A. MacInnes, Assistant Commissioner of Education in charge of *Abbott* implementation; and Fred Carrigg, Special Assistant to the Commissioner for Urban Literacy;

And the Court having been further advised by Judge Carchman that, consistent with this Court's Order of April 29, 2003, "the positions espoused by those who were granted *amicus curiae* status" were considered and their counsel kept informed about the progress of the mediation;

And the Court having been further advised by Judge Carchman that the mediation resulted in the parties reaching agreement on all issues except the DOE's application to extend by one additional year the one-year relaxation of remedies previously granted in *Abbott v. Burke*, 172 *N.J.* 294, 798 *A.*2d 602 (2002) (*Abbott IX*);

And the Court having acknowledged Judge Carchman's conclusion that the successful mediation between the parties bespeaks the commitment of all parties to ensuring the enhancement of educational opportunities for all students in the *Abbott* districts;

And the parties having previously reached agreement on an expedited budget process and appeals therefrom, as approved by the Court and set forth in this Court's Order filed May 21, 2003;

And the DOE having withdrawn its application for relief, except as to its request for a one-year extension of the relaxation of remedies granted by the Court in *Abbott IX,* which request remains unresolved by mediation and continues to be opposed by the ELC;

And the DOE having further agreed not to adopt the proposed regulations relating to the issues before the Court;

And the Commissioner having reserved his right to adopt that portion of the proposed regulations related to the 2003–2004 maintenance budget in respect of the single issue the parties were unable to resolve;

And the ELC or *Abbott* districts having reserved their rights in respect of the single issue the parties were unable to resolve;

And the parties having requested that the Court direct the improvements to implementation of WSR and supplemental programs as agreed to in mediation;

And good cause appearing;

 It is ORDERED that the mediated agreement set forth in Judge Carchman's Report is approved by the Court as follows:

1. Every *Abbott* elementary school shall continue to implement WSR as required by *Abbott V;*

2. Every *Abbott* elementary school also shall continue to implement the selected WSR model, except as described below:

 a. *Low Performing Schools*

 (1) The Commissioner shall, based on progress benchmarks agreed to in mediation, designate schools as low performing. A low performing school is defined as a school whose percentage pass rate on the 2002 Elementary School Proficiency Assessment (ESPA) Language Arts Literacy subtest for general education students is fifty percent or less. The designation of low performing schools shall be adjusted by the Commissioner, as appropriate, based on mean score growth over four years (1999–2002);

 (2) Low performing schools shall undergo a review and planning process to make informed decisions about school and/or program improvement as follows:

(a) A Performance Assessment Team (Team) shall be assigned to each low performing school. Teams shall include, but not be limited to, a highly skilled teacher, an administrator, and a parent. The Team, in collaboration with the School Management and Improvement Team (SMIT), shall review and assess obstacles to improved performance, including quality of instruction and school leadership; effectiveness of the SMIT; level of parent participation, WSR model implementation, support from DOE and the district central office; the adequacy of supplemental programs and services to meet student needs; and such other areas of inquiry as the Commissioner shall deem appropriate. The teams shall be assembled by the DOE in consultation with the district central office and, where appropriate, with such schools subject to review;

(b) The team, the district and the SMIT will develop an agreement based on the findings of the team as to the strategies and objectives for improving student achievement, how to implement those strategies and objectives, and the responsibilities of the various individuals and/or entities;

(c) The agreement shall include either (1) continued or improved implementation of the selected WSR model; (2) selection of another DOE-approved WSR model; or (3) an alternate WSR design;

(d) The Commissioner shall assist in resolving any disagreements between and among the Team, the SMIT and the district central office;

(e) The Commissioner shall review and approve the agreement. Upon approval, the district and the school shall present the agreement to the school community and to plaintiffs;

(f) Nothing herein shall limit the authority of the Commissioner to conduct a pilot program in ten low performing schools prior to the conclusion of the collaborative rulemaking process established below, notwithstanding that the ELC has not agreed to the structure, timing and direction of the proposed pilot program;

(3) Regulations shall be developed to implement the review and agreement process herein approved;

b. *High Performing Schools*

(1) The Commissioner shall, based on progress benchmarks agreed to in mediation, designate schools as high performing. A high performing school shall be defined as a school that has a percentage pass rate on the 2002 ESPA Language Arts Literacy subtest for general education students above the state average percentage pass rate. The designation of high performing schools shall be adjusted by the Commissioner, as appropriate, based on mean score growth over four years (1999–2002);

(2) Based on a comprehensive assessment of student and school needs, the SMIT in consultation with the district central office may develop a Plan which includes one of the following:

(a) adjustment to implementation of the selected WSR model;

(b) selection and implementation of another DOE-approved WSR model; or

(c) development and implementation of an alternate WSR design;

(3) The Commissioner shall assist in resolving any disagreements between the SMIT and the district central office;

(4) The Commissioner shall review and approve the Plan. On approval, the district and the school must present the Plan to the school community and to plaintiffs;

(5) Regulations shall be developed to implement the assessment and planning process for high performing schools as herein approved;

c. *Schools Without WSR Developer Contracts in 2002–03*

(1) Any school, other than those designated low or high performing, that did not have a WSR developer contract in 2002–03 shall be required to reinstate in 2003–04 any previously existing contract or to contract with a WSR developer. In those circumstances, where the Commissioner determines that no appropriate model is available to meet the current needs of the school, the Commissioner may authorize an alternative WSR design;

(2) Regulations shall be developed to implement the provisions of paragraph c(1);

d. *WSR Contract Problems*

(1) Any school, other than those designated low or high performing, or any WSR developer experiencing problems with performance under the terms of a WSR contract may, at any time, file a complaint and request for investigation and resolution of such complaint with the Commissioner. The Commissioner shall take such action as may be required to ensure satisfactory performance under the WSR contract;

(2) Regulations shall be developed to implement the provisions of paragraph d(1);

e. *Alternate WSR Design*

Regulations shall be developed to guide planning for the adoption and implementation of an alternate WSR design;

3. *Whole School Reform in Middle and High Schools: Collaborative Work Group*

a. A "Collaborative Work Group on Middle and High Schools" (Work Group) shall be established to develop protocols and guidance for a program of WSR in *Abbott* district middle and high schools. The parties shall agree on participants, agenda, meetings and other operations of the Work Group. The first meeting shall take place no later than July 15, 2003;

b. The Work Group shall look at both successful *Abbott* schools and other successful secondary schools. The Work Group shall review data on student achievement and actual dropouts, the level of implementation of the *Abbott* remedies since 1999, the appropriateness of prior regulations on secondary WSR (including provisions concerned with required positions, services and programs in the secondary schools), and the research on secondary WSR models and other initiatives designed to improve teaching and learning in urban middle and high schools. The Work Group shall make recommendations for a program of WSR in middle and high schools no later than

December 31, 2003. The Work Group is not limited in its recommendations by the contents of the chart described in paragraph 4(a) of this Order;

c. The parties shall work together to develop proposed regulations to implement recommendations of the Work Group and seek input from interested persons and groups on the proposals prior to publication. Regulations shall be adopted in time for implementation in *Abbott* district middle and high schools by 2004–2005;

4. *Supplemental Programs*

a. Every *Abbott* school shall continue to implement supplemental programs as set forth in the chart entitled "Supplemental Programs in *Abbott* Schools," attached hereto. Although the DOE has not agreed that all of the programs listed on the chart are supplemental or are required by *Abbott V*, the Department has agreed to the inclusion of the contents of the chart in regulations to be adopted;

b. Regulations shall be developed to guide school and district assessment, planning and implementation of needs-driven supplemental programs as set forth in the chart entitled "Supplemental Programs in *Abbott* Schools";

5. *Supplemental Funding*

a. The DOE 2003–2004 proposed regulations notwithstanding, the DOE represents that its funding proposal relates only to the 2003–2004 school year, and that it does not otherwise seek to modify or limit the right of *Abbott* districts to request supplemental funding for all demonstrably needed programs, services and positions and to appeal the denial of such requests, as provided for in *Abbott V*, 153 *N.J.* at 517–19, 525–27, 710 *A.2d* 450;

b. Regulations shall be developed to implement the provisions of paragraph 5(a);

6. *Cooperative Rulemaking*

a. The Commissioner shall establish an *Abbott* Rulemaking Committee (Committee) no later than June 30, 2003. In addition to the parties (and their counsel, as needed), the Committee shall be comprised of designated interests, as follows:

District Superintendents (2),

Teachers (2),

Principals (2),

Parents (2),

Community (2),

Higher Education (2),

WSR Developer (1),

Legislators (2);

b. The parties shall reach agreement on the Committee members who will represent the designated interests on the Committee, which members shall be responsible for their own expenses of participation;

c. The Commissioner shall submit to the Committee his proposed regulations on the *Abbott* K–12 programs and reforms no later than July 2, 2003;

d. The Committee shall make every effort to reach consensus on those proposed regulations no later than July 31, 2003;

e. With the concurrence of the parties, the Commissioner shall appoint an impartial and neutral person to serve as facilitator/mediator. The facilitator/mediator shall:

(1) Schedule and chair Committee meetings;

(2) Facilitate the Committee's discussions and deliberations;

(3) Attempt to mediate any disputes in order to reach consensus;

(4) Arrange for minutes to be kept of each meeting and distribute those minutes to all participants;

(5) Direct the process of revising the Commissioner's proposals and draft regulations, as necessary; and

(6) Provide on-going progress.reports to the Commissioner;

f. The Commissioner shall be responsible for the expenses of the facilitator/mediator;

g. If the Committee is unable to reach consensus on any issue despite the best efforts of the facilitator/mediator, the Commissioner may resolve the issue, subject to any right to judicial appeal of the final regulations;

h. If necessary to complete the work of the Committee, or on the request of the facilitator/mediator, the time frames established herein shall be extended on agreement of the parties;

i. The Commissioner and the parties are urged to continue engaging in cooperative rulemaking to develop consensus regulations implementing the *Abbott* decisions;

7. *Adoption of Regulations*

The parties shall support the inclusion of language in the Appropriations Act consistent with the language in the Governor's budget permitting the Commissioner to adopt *Abbott* regulations effective on filing with the Office of Administrative Law. The Commissioner will exercise that authority consistent with the *Abbott* decisions and this Order;

8. *Expedited Early Childhood Review*

The following schedule shall be implemented in respect of the decision and appeal process relating to the Early Childhood Education program:

a. The DOE shall issue budget decisions to Districts on or before the fifteenth of January;

b. The Districts shall have thirty days from the date of the Department's determination to file an appeal with the Office of Administrative Law;

c. The Office of Administrative Law shall determine the District Appeal within forty days, and the initial decision shall include an itemization of the record;

d. The Commissioner of Education shall issue a final decision within twenty-five days of the Office of Administrative Law's decision;

e. Any appeal from the final decision of the Commissioner shall be filed with the Appellate Division within six days of the Commissioner's decision; and

f. The Appellate Division shall expedite any appeal from the Commissioner's final decision;

9. *Evaluation of Abbott Programs*

a. The parties shall agree to the composition and scope of work for a small group (Group) to recommend the structure, content, scale and duration of a prospective evaluation of the effectiveness of programs and reforms in improving student achievements in the *Abbott* districts;

b. The Group shall consist of DOE and ELC members, practitioners (at least one *Abbott* superintendent), researchers/scholars with experience with similar formats, and others mutually agreed on;

c. The Group shall hold its first meeting by June 30, 2003, with the sole agenda item to be the review of data fields contemplated for inclusion in NJSMART and to determine whether any fields should be included;

d. Recommendations for the design of an evaluation shall be completed by September 1, 2003 and shall include a proposed schedule and probable costs, and

It is further ORDERED that the issue on which the parties have not reached accord—the DOE's application to extend by one additional year the one-year relaxation of remedies previously granted in *Abbott IX*—is set down for oral argument in the Supreme Court Courtroom, Hughes Justice Complex, 25 Market Street, Trenton, on Thursday, July 10, 2003 at 9:30 a.m. The parties should be prepared at that time to address the implications of the grant or denial of relaxation and the standards to be applied during the budget review process.

WITNESS, the Honorable Deborah T. Poritz, Chief Justice at Trenton, this 24th day of June, 2003.

Chief Justice PORITZ and Justices LONG, LaVECCHIA, ALBIN, and WALLACE join in the Court's Order. Justices VERNIERO and ZAZZALI did not participate.

APPENDIX

## Supplemental Programs in Abbott Schools

In *Abbott V*, the Supreme Court directed implementation of supplemental programs and services in Abbott schools. In some program areas, the Court established a "baseline" as the minimum requirement. In others, the programs are required without a baseline, but the design of the program must be based on need. In still others, the program is not required, but must be implemented and designed as needed.

In all program areas, the Court "stressed the importance of having the particularized needs of these children drive the determination of what programs should be developed," concluding that the "provision of supplemental programs involving necessary services should not be detached from the actual needs of individual Abbott schools and districts."

The determination of need must guide school and district plans and budgets in all program areas. Thus, where the Court established a baseline, schools must either provide the baseline or, depending on need, adjust it to provide none, less or more than the baseline, or an alternate design.

| | Required Program Areas With Baseline | Objectives | Baseline | Options |
|---|---|---|---|---|
| 1 | Full-day kindergarten | (1) to help children at risk become effective learners in first grade<br>(2) to increase the benefits deriving from the half-day program (502) | provide full day kindergarten by September '99 | none |
| 2 | Early reading literacy | (1) to assure that each student reads "at the appropriate level" (495)<br>(2) to prevent children from falling behind and needing remediation.<br>(3) to intervene early and intensively if a student is experiencing difficulty in achievement (554) | (1) 90 minute reading block each day (all schools)<br>(2) regular progress assessment of each student (all schools)<br>(3) instructional facilitator (all schools)<br>(4) reduce 1-3 reading class size to 15 (SFA schools)<br>(5) 20 minutes of daily one-to-one tutoring by a certified teacher for each student in grades 1-3 not reading on grade level (SFA schools)<br>(6) 20 minutes of daily small group tutoring by a certified teacher for students in higher elementary grades not reading on grade (SFA schools) | yes |

1

| | | | | yes |
|---|---|---|---|---|
| 3 | Elementary Parent Involvement | (1) to recruit parents to join parent participation programs and become involved with the schools and their schoolchildren (11, 373)<br>(2) to involve parents in school decision-making (8,14)<br>(3) to foster parenting skills and career development (8, 14)<br>(4) increased parental education to support students' learning at home (556) | (1) parent liaison<br>(2) parent representation in school management | yes |
| 4 | Class size Limits | (1) to increase the frequency of student-teacher interactions<br>(2) to reduce distractions<br>(3) to provide more opportunity for assessment, feedback, and reinforcement (560) | (1) preschool: 15<br>(2) K-3: 21<br>(3) 4 and 5: 23<br>(4) 6 and above: 24 | none, except if early class size of 15 is needed |
| 5 | Elementary Social and Health Referral and Coordination | (1) to use school and community resources to ensure that children come to school every day prepared to learn<br>(2) to provide health, counseling, nutritional, tutorial and other needed services (496)<br>(3) to focus on attendance, coordination of outside services, parent involvement and behavior (556) | family support team comprised of nurse, social worker, counselor, and includes the parent liaison and instructional facilitator | yes |

2

| | | | | |
|---|---|---|---|---|
| 6 | Middle and High School Social and Health Referral and Coordination | (1) to provide for significant health and social service needs, including those stemming from poverty, substance abuse, teenage pregnancy and parenthood, inadequate housing, violence and crime<br>(2) to improve student performance, attendance, and dropout rates<br>(3) to reduce teacher time taken out to deal with such problems (509)<br>(4) to ensure that services are actually available and provided quickly<br>(5) to ensure that uninsured students receive needed services. (510)<br>(6) to identify student needs<br>(7) to arrange for community-based providers to furnish essential health and social services (512) | community services coordinator | yes |
| 7 | Access to technology | (1) to help students master the basic and advanced skills necessary to reach the CCCS<br>(2) to improve student motivation and learning (514)<br>(3) to ensure that school and classroom libraries have appropriate materials to supplement the curriculum<br>(4) to facilitate the implementation and use of educational technology throughout the school (515)<br>(5) to increase effective use of technology in Abbott classrooms (564) | (1) media specialist<br>(2) technology coordinator<br>(3) a ratio of 1 computer for every 5 students, including peripherals and software | yes |
| 8 | Dropout prevention and alternative education | (1) to prevent dropouts<br>(2) to provide more individualized instruction<br>(3) to provide additional supports, such as job counseling<br>(4) to decrease disruption in the regular school<br>(5) to increase achievement<br>(6) to foster positive lifestyles<br>(7) to reduce aggressive behavior (515) | (1) alternative middle and alternative high school program, both high quality<br>(2) dropout prevention specialist | yes |

| | Required Program Areas With No Baseline | Objectives | Baseline | Options |
|---|---|---|---|---|
| 1 | Early math literacy and mastery of other core subjects | (1) to develop student skills in higher-order thinking, problem solving, and discovery (2) to make the entire elementary curriculum relevant and useful (556, 557) | none | yes |
| 2 | Professional Development | (1) to provide ongoing, continuous opportunities for practitioners to improve practice (496) (2) to focus on all the core curriculum content standards (496) (3) to provide teachers and administrators with a variety of rich and meaningful learning experiences, based on student need (S,16) (4) to provide regular support and feedback for classroom teachers (S,16) | none | yes |
| 3 | Violence prevention and school security | (1) to assure adequate school security (2) to improve the education process (3) to remove a great barrier to learning (514) (4) to address problems of student disruptions and violence (5) to define acceptable student behavior and consequence for unacceptable behavior (564) | none | yes |
| 4 | School to work and college transition | 1) to increase the basic skills of students to support themselves responsibly (2) to provide access to information about college and employment opportunities (3) to match students with prospective employers (4) to help students become aware of their interests and strengths (570) | none | yes |

4

| | If Needed Program Areas | Objectives | Baseline | Options |
|---|---|---|---|---|
| 1 | On-site social and health services | (1) to provide an effective and realistic opportunity for these schools to provide on-site services that go beyond mere referral and coordination (2) to provide onsite services if it can be shown that they "either are not available within the surrounding community or cannot effectively and efficiently be provided off site." 512-513 | none | yes |
| 2 | Supplemental literacy supports for non-SRA schools | (1) to reduce 1-3 reading class size to 15 (2) to provide 20 minutes of daily one-to-one tutoring by a certified teacher for each student (4) to provide 20 minutes of daily small group tutoring by a certified teacher for students in grades 1-3 not reading on grade level tutoring by a certified teacher for students in higher elementary grades not reading on grade | none | yes |
| 3 | Instructionally-based after school programs | (1) to increase instructional time (2) to provide homework and tutorial assistance (3) to provide computer training (4) to provide recreation opportunities (516) (5) to provide a structured alternative to unsupervised after school hours (6) to provide after school social and health services (567) | none | yes |
| 4 | Instructionally-based summer programs | (1) to prevent the summer learning loss of disadvantaged students (2) to provide structure during unsupervised months (3) to provide a summer program of instruction (4) to provide summer recreation (5) to provide summer employment (516) | none | yes |
| 5 | Enriched nutrition programs | (1) to provide high quality breakfast and lunch (516-17) (2) to provide high quality snack (3) to fill any gap left by current programs | none | yes |

| 6 | "Exemplary" music, art, and special education | to provide exemplary music, art and special education programs beyond those recommended by the Commissioner (518) | none | yes |
|---|---|---|---|---|
| 7 | School-based management and budgeting | (1) to fundamentally alter the way decisions are made (2) to establish a team of parents, administrators, and teachers (494) (3) to develop a school based budget (605) (4) to actively involve all stakeholders in planning, budgeting, and governance (5) to increase effectiveness and tenure of school reform (S,14) | none | yes |

6