872 A.2d 1052

BOARD OF EDUCATION OF THE CITY OF MILLVILLE, CUMBER-
LAND COUNTY, PETITIONER–APPELLANT, v. NEW JERSEY
DEPARTMENT OF EDUCATION, RESPONDENT–RESPON-
DENT.

BOARD OF EDUCATION OF THE TOWNSHIP OF PEMBERTON,
BURLINGTON COUNTY, PETITIONER–APPELLANT, v. NEW
JERSEY DEPARTMENT OF EDUCATION, RESPONDENT–RE-
SPONDENT.

BOARD OF EDUCATION OF THE TOWN OF PHILLIPSBURG,
WARREN COUNTY, PETITIONER–APPELLANT, v. NEW JER-
SEY DEPARTMENT OF EDUCATION, RESPONDENT–RE-
SPONDENT.

BOARD OF EDUCATION OF THE TOWNSHIP OF NEPTUNE, MON-
MOUTH COUNTY, PETITIONER–APPELLANT, v. NEW JER-
SEY DEPARTMENT OF EDUCATION, RESPONDENT–RE-
SPONDENT.

Argued October 27, 2004—Decided May 19, 2005.

*Richard E. Shapiro* and *Jennifer R. Webb–McRae* argued the cause for appellants (*Mr. Shapiro,* attorney for Board of Education of the Township of Pemberton, Board of Education of the

Town of Phillipsburg and Board of Education of the Township of Neptune and *Robinson & Andujar*, attorneys for Board of Education of the City of Millville, attorneys; *Mr. Shapiro* and *Arnold Robinson*, on the briefs).

*Michelle L. Miller*, Deputy Attorney General, argued the cause for respondent (*Peter C. Harvey*, Attorney General of New Jersey, attorney; *Nancy Kaplen*, Assistant Attorney General, of counsel; *Allison Colsey Eck*, Deputy Attorney General, on the briefs).

*David G. Sciarra*, Executive Director, Educational Law Center, argued the cause for *amicus curiae, Abbott v. Burke* plaintiffs.

Chief Justice PORITZ delivered the opinion of the Court.

In these consolidated cases certain Abbott districts [1] raise the question whether the State is legally obligated to fund with state appropriations the Districts' preschool programs for the 2003–2004 school year. More specifically, after the Department of Education (DOE or Department) had approved the early childhood budgets submitted by the Boards of Education of Phillipsburg, Millville, Pemberton, and Neptune (the Districts) for 2003–2004, the Districts were advised that they would receive less than the entire approved amount from the State. During the course of these proceedings, however, the Commissioner of the DOE (Commissioner) has represented to the Court that any monies reallocated from other District resources to make up the preschool program shortfalls will be replaced by the DOE through supplemental funding unless the DOE can demonstrate that those monies are not needed by the Districts. Based on that representation, we uphold the State's funding scheme. We caution, however, that this scheme is both cumbersome and time-consuming and urge the

---

[1] See *Abbott v. Burke*, 119 *N.J.* 287, 334–57, 575 *A.2d* 359 (1990) (*Abbott* II), for a description of "the genesis and development of the State's classification of school districts and the bases on which the Court concluded that" the *Abbott* remedies would apply to a designated number of poor urban districts with "special needs." *Abbott v. Burke*, 164 *N.J.* 84, 88–89, 751 *A.2d* 1032 (2000) (*Abbott* VII).

DOE to implement a method of allocation aligned in the first instance with the Districts' approved budgets.

## I.

## A.

In *Abbott v. Burke*, 153 *N.J.* 480, 508, 710 *A.*2d 450 (1998) (*Abbott* V), this Court required Abbott districts to provide half-day preschool programs for three- and four-year-old children, and directed the Commissioner to "ensure that such programs are adequately funded." Not long after *Abbott* V issued, however, plaintiffs returned to the Court complaining "that the Commissioner ha[d] repudiated his promise to provide [a] quality preschool education ... in the Abbott districts." 163 *N.J.* 95, 100, 748 *A.*2d 82 (2000) (*Abbott* VI). We sought in *Abbott* VI to clarify our intent in respect of quality preschool programming, including among other things, certain funding issues raised by plaintiffs. *Id.* at 104, 117–18, 748 *A.*2d 82. In response to plaintiffs' concerns vis-à-vis adequate funding for preschool facilities, we reaffirmed the approach taken in *Abbott* V, repeating Justice Handler's direction to the Commissioner to "ensure" resources and funding for Abbott district preschools by the 1999–2000 school year. *Id.* at 117, 748 *A.*2d 82 (quoting *Abbott* V, 153 *N.J.* at 508, 710 *A.*2d 450).

Notwithstanding the direction provided in *Abbott* VI, one year later the *Abbott* plaintiffs filed a second motion in aid of litigants' rights, again requesting specific relief as to a broad range of procedural and substantive issues related to the implementation of preschool programs in the Abbott districts. *Abbott v. Burke*, 170 *N.J.* 537, 540–41, 790 *A.*2d 842 (2002) (*Abbott* VIII). Plaintiffs alleged in *Abbott* VIII "that the DOE ha[d] imposed upon the districts pre-established, arbitrary 'per-student' funding amounts that d[id] not take into account real 'per-student' costs." *Id.* at 557, 790 *A.*2d 842. We held that

[d]istrict budgetary requests must be developed and articulated with specificity, and, equally important, the DOE must respond with appropriate explanation.

Formulaic decision-making neither assists the districts nor provides a basis for further review on appeal.

[*Id.* at 559, 790 *A.2d* 842.]

We approved DOE instructions for district provider budget preparation focused on "actual cost":

Districts should work with [preschool] providers to ensure that costs are reasonable and appropriate and that sufficient justification for provider costs is incorporated into the district plan. Providers are asked to construct a zero-based budget reflecting the actual cost of delivering an early childhood education program meeting Abbott standards to Abbott children. There is no predetermined per pupil amount, as allocations shall be based on the unique needs of each provider and/or site.

[*Ibid.* (internal quotations and citation omitted).]

And, we ultimately concluded:

Whatever nomenclature is used to describe the budget calculation, it must yield funding decisions based not on arbitrary, predetermined per-student amounts, but, rather, on a record containing funding allocations developed after a thorough assessment of actual needs.

[*Ibid.*]

The Court anticipated that those requirements, if met, would result in DOE approved Abbott district budgets based on a realistic assessment of an individual district's needs in respect of quality full-day preschools for three- and four-year-old children.

Later in 2002 and in 2003 the DOE sought modification of the Court's requirements. Those cases, in large part, were driven by the State's budget crisis, as well as a perceived need for greater flexibility in the "implementation of the [*Abbott v. Burke*, 149 *N.J.* 145, 693 *A.2d* 417 (1997) (*Abbott* IV) ] and *Abbott* V remedial measures." *Abbott v. Burke*, 172 *N.J.* 294, 295, 798 *A.2d* 602 (2002) (*Abbott* IX); see *Abbott v. Burke*, 177 *N.J.* 578, 832 *A.2d* 891 (2003) (*Abbott* X); *Abbott v. Burke*, 177 *N.J.* 596, 832 *A.2d* 906 (2003) (*Abbott* XI). Most important, although the Court accepted the DOE's proposal for a one-year [2] "cessation of further growth in funding of certain of the *Abbott* remedial measures," *Abbott* IX, 172 *N.J.* at 295, 798 *A.2d* 602, it did so on the DOE "repre-

---

[2] *Abbott* XI, 177 *N.J.* at 598, 832 *A.2d* 906, extended by one additional year the relaxation of remedies permitted in *Abbott* IX.

sent[ation] that 'parity' funding [3] . . . [would] be maintained," and that "pre-school programs for three- and four-year olds also [would] be maintained and enhanced." *Id.* at 296, 798 *A.*2d 602.

## B.

In 1996, the Legislature passed the Comprehensive Educational Improvement and Financing Act (CEIFA), *N.J.S.A.* 18A:7F–1 to – 36, which governs academic standards and state funding for New Jersey's system of free public schools. CEIFA provided a formula for calculation of Early Childhood Program Aid (ECPA) that was to "be distributed to all school districts with high concentrations of low-income pupils, for the purpose of providing full-day kindergarten and preschool classes and other early childhood programs and services." *N.J.S.A.* 18A:7F–16a. Because the State was unable to link the per-pupil amounts derived from the ECPA formula to the actual costs of early childhood education, however, the Court in *Abbott* IV rejected the ECPA calculation as not demonstrably related to need. 149 *N.J.* at 180–86, 693 *A.*2d 417.

After our decision in *Abbott* V, supplemental funding in the form of Additional *Abbott v. Burke* State Aid was made available for preschool programming. Also, by regulation, the Abbott districts were required to provide full-day preschool programs for all three- and four-year-old children by the 2001–2002 school year. *N.J.A.C.*

---

3 Parity funding refers to the Court's remedy in *Abbott* II, 119 *N.J.* at 385, 575 *A.*2d 359, which required the Legislature "to assure that poorer urban districts' educational funding is substantially equal to that of property rich districts." In *Abbott* IV parity was established as the amount required to increase the per-pupil regular education expenditures in the Abbott districts to the level of the average per-pupil regular education expenditures of District Factor Groups I and J Districts, the wealthiest districts in New Jersey. 149 *N.J.* at 189–98, 693 *A.*2d 417. Aid distributed to achieve parity was designated as *Abbott v. Burke* Parity Remedy Aid, *see* Appropriations Act for Fiscal Year 2003, *L.* 2002, *c.* 38 (FY03 Appropriations Act); such aid is now combined with Additional *Abbott v. Burke* State Aid and designated Education Opportunity Aid. Appropriations Act for Fiscal Year 2005, *L.* 2004, *c.* 71.

6A:24-3.3(a), -3.4(a).  The parties in this matter have represented to us that preschool programs in the 2001–2002 school year were supported by whatever resources were available to the Districts, and that when sufficient resources were not available the Districts applied for supplemental funding.

As mentioned above, due to a state budget crisis, in 2002 the DOE sought and obtained limitations on supplemental funding for the Abbott districts.  The DOE committed to continued growth and improvement in early childhood programs during the maintenance budget period, however, and the Legislature established a state aid category denominated Preschool Expansion Aid (PSEA) specifically to fund the cost of preschool expansion.  *See* FY03 Appropriations Act, *L.* 2002, *c.* 38 ("The amount appropriated hereinabove as Abbott Preschool Expansion Aid is for the purpose of funding the increase in the approved budgeted costs from 2001–2002 to 2002–2003 for the projected expansion of preschool programs in 'Abbott districts.'").  Thus, during that period, the Abbott districts continued to receive both ECPA funding in amounts determined by a statutory formula based on a modified tally of a District's total enrollment, *N.J.S.A.* 18A:7F–16, and PSEA awards based on the difference between the Districts' approved preschool operating plans for the current fiscal year and the cost of preschool programs for the 2001–2002 school year.  FY03 Appropriations Act, *L.* 2002, *c.* 38.  The FY03 Appropriations Act provided $142.4 million in PSEA funding.  *Ibid.*

When the Court permitted the DOE to extend the maintenance budget for another school year (2003–2004), the commitment to expand early childhood programs remained in place.  The ECPA formula was not changed, but, for FY04, PSEA awards were calculated by subtracting the 2001–2002 approved budget cost for preschool programs from the 2003–2004 approved cost.  The disputes in the appeals now before us arise from the difference between state funding for preschool, which represents the sum of the ECPA and PSEA awards, and the approved budgets for the 2003–2004 preschool plans in each of the four Abbott districts.

Those differences were $835,034 for Phillipsburg, $424,569 for Pemberton, $1,763,866 for Millville, and $3,768,176 for Neptune. *Millville Bd. of Educ. v. New Jersey Dep't of Educ.*, 367 *N.J.Super.* 417, 420, 843 *A.*2d 338 (App.Div.2004).

## II.

The parties agree that after negotiation and the resolution of a prior appeal, the Phillipsburg preschool program budget for the 2003–2004 school year was approved by the DOE in mid-March 2003 at a total cost of $3,590,720. Based on the approved budget, the DOE established the District's PSEA for FY04 as $1,011,775. When the ECPA amount, set by statutory formula at $1,743,911, was added to the PSEA award and the total was offset against the $3,590,720 approved budget, Phillipsburg was short $835,034 in its preschool account. *Bd. of Educ. of Phillipsburg v. New Jersey Dep't of Educ.*, OAL Dkt. No. EDU 3423–03, slip op. at 3–4 (Office of Administrative Law Initial Decision, May 21, 2003).

Phillipsburg appealed the Department's funding decision to the Commissioner on March 27, 2003, and on April 4, 2003, the Commissioner transmitted the matter to the Office of Administrative Law (OAL) for hearing as a contested case. *Id.* at 2. The matter was decided in the OAL on cross-motions for summary decision and a joint stipulation of facts. *Id.* at 3. In that proceeding, the DOE asserted that the State was not "legally obligated to provide full funding for Phillipsburg's preschool program" which, in the Department's view, could "be derived from a combination of sources including, where applicable, local tax share." *Id.* at 2.

The Administrative Law Judge (ALJ) disagreed. He concluded that the DOE "should arrange for full state funding of Phillipsburg's approved preschool program for FY 2004." *Id.* at 4. His inquiry focused on the Court's *Abbott* opinions, legislative intent, and the DOE's understanding of its responsibility to fund preschool. He acknowledged that in *Abbott* V the Court "stopped short of declaring a constitutional mandate for preschool education programs," *id.* at 6, but found in our opinion a recognition of the

critical nature of quality early childhood education and an endorsement of the Commissioner's promise to provide or secure funding if needed. *Id.* at 5. In respect of guidance from the Legislature, he pointed to the language of the Governor's Budget Message for FY04 (Budget Message) as reflective of an intent to fund preschool in the Abbott districts entirely with state appropriations:

> The amount appropriated hereinabove for Additional Abbott v. Burke State Aid will provide additional resources to "Abbott districts" to meet the State's obligation *to fully fund parity and the approved early childhood operational plans.* The remaining funds appropriated will be used for the award of discretionary funding to Abbott districts to maintain the programs, services and positions from the prior year that the [C]ommissioner determines are essential to the provision of a thorough and efficient education in those districts.
>
> [*Id.* at 6 (quoting Budget Message and adding emphasis).]

This statement, in the ALJ's view, evidenced the State's recognition of its obligation in respect of preschool operations. *Ibid.* Finally, the ALJ relied on the Department's communications to the Abbott districts wherein staff had assured the Districts that the State would fully fund approved programs. *Id.* at 7. Based on *Abbott* V, the Budget Message language, and DOE staff assurances to the Districts, the ALJ determined that the State was required to fund approved preschool programs in their entirety. *Id.* at 6–7.

The Boards of Education of Millville, Pemberton, and Neptune also challenged the adequacy of their combined EPCA and PSEA awards. Those Districts claimed shortfalls of $1,763,866, $424,569, and $3,768,176, respectively. After the Initial Decision in *Phillipsburg, supra,* issued however, the parties in the Millville, Pemberton, and Neptune cases agreed to proceed by stipulating to essential facts and by relying on the arguments advanced in their briefs. The ALJs handling those cases subsequently granted the Districts' motions for summary decision, concurring with the determination in *Phillipsburg, supra. Bd. of Educ. of Millville v. New Jersey Dep't of Educ.,* OAL Dkt. No. EDU 379–03, slip op. at 3 (Office of Administrative Law Initial Decision, Sept. 5, 2003); *Bd. of Educ. of Pemberton v. New Jersey Dep't of Educ.,* OAL Dkt. No. EDU 2203–03, slip op. at 4 (Office of Administrative Law

Initial Decision, July 30, 2003); *Bd. of Educ. of Neptune v. New Jersey Dep't of Educ.*, OAL Dkt. No. EDU 2202–03, slip op. at 4 (Office of Administrative Law Initial Decision, July 2, 2003).

On September 25, 2003, the Commissioner issued his decision in *Phillipsburg. Bd. of Educ. of Phillipsburg v. New Jersey Dep't of Educ.*, OAL Dkt. No. EDU 3423–03, slip op. at 18 (Commissioner of Education, Sept. 25, 2003). The Commissioner rejected the ALJ's conclusion that the State was required to fund *Abbott* preschool programs in their entirety regardless of the availability of other funds in the District budget. *Id.* at 16–18. He observed that after the ALJ issued his Initial Decision, the Legislature passed and the Governor signed the Appropriations Act for Fiscal Year 2004 (FY04 Appropriations Act), *L.* 2003, *c.* 122. The language in the Budget Message had been altered prior to passage and now read: "The amount appropriated . . . for Additional *Abbott v. Burke* State Aid will provide additional resources to '*Abbott* districts' to meet the State's obligation to fully fund parity and approved '*Abbott*' preschool expansion." FY04 Appropriations Act, *L.* 2003, *c.* 122. Along the way to the vote on the budget the express intent to provide full funding for "approved early childhood operational plans" had been converted to "approved '*Abbott*' preschool expansion." Relying in part on that language change as evidence of a legislative purpose only to fund "preschool expansion" from state appropriations, the Commissioner rejected the notion that all approved early childhood plans must be funded exclusively through state aid. *Phillipsburg, supra,* OAL Dkt. No. EDU 3423–03, slip op. at 17–18 (Commissioner). The Commissioner further concluded that none of the judicial or legislative directives regarding preschool programs required full State funding regardless of a district's available resources. *Id.* at 16. Rather, the State's obligation is

to ensure, with additional aid if necessary, that sufficient funds are available to the district to fully fund its preschool program, that is, to ensure that any gap remaining after receipt of statutory formula aids will be addressed by the State *to the extent that need exists* because funds otherwise available to the district are insufficient to fully support the approved program.
[*Id.* at 16–17.]

On the same day that the decision in *Phillipsburg, supra,* issued (September 25, 2003), the Commissioner also decided the Millville, Pemberton, and Neptune appeals, ruling similarly in all three cases: that the State is not required fully to fund early childhood education in the Abbott districts; rather, the DOE may ask the Districts to reallocate monies designated for other approved District programs but not needed to support those programs. *Bd. of Educ. of Millville v. New Jersey Dep't of Educ.,* OAL Dkt. No. EDU 379–03, slip op. at 10–11 (Commissioner of Education, Sept. 25, 2003); *Bd. of Educ. of Pemberton v. New Jersey Dep't of Educ.,* OAL Dkt. No. EDU 2203–03, slip op. at 18 (Commissioner of Education, Sept. 25, 2003); *Bd. of Educ. of Neptune v. New Jersey Dep't of Educ.,* OAL Dkt. No. EDU 2202–03, slip op. at 17 (Commissioner of Education, Sept. 25, 2003).

The four Abbott districts appealed the Commissioner's decisions to the Appellate Division where the cases were consolidated by Order dated December 9, 2003. On March 12, 2004, the Appellate Division agreed with the Commissioner's determination "that the Supreme Court has only directed [him to] 'ensure' that there be adequate funding for these programs, thus permitting the utilization of local district funds." *Millville, supra,* 367 *N.J.Super.* at 424, 843 *A.*2d 338.

Based on its interpretation of the *Abbott* decisions and the FY04 Appropriations Act, the Appellate Division concluded that the State is not exclusively responsible for funding preschool programs in the Abbott districts. *Id.* at 419, 843 *A.*2d 338. On careful consideration of *Abbott* IV and *Abbott* V, the panel found

> that the adoption of whole-school reform, with its inclusion of preschool education in the Abbott districts, was designed by the Court as a remedy for the past constitutional deprivation of a thorough and efficient education for children between the ages of five and eighteen in the Abbott districts. In so recognizing the nature of *Abbott* V's mandate, and in comparing that mandate with others rendered by the Court in this context, [the panel] also [found] that the Court did not intend to require exclusive state funding of preschool in the Abbott districts.
>
> [*Id.* at 424, 843 *A.*2d 338.]

In support of its determination, the panel cited *Abbott* V, observing "that the Court has chosen quite emphatic language when

exclusive State funding was intended," whereas in respect of preschool "the Court simply imposed an obligation on the Commissioner to 'ensure' that such funding is provided." *Id.* at 424–25, 843 *A.*2d 338.

The Appellate Division also agreed with the Commissioner that the FY04 Appropriations Act eliminated any promise found in the Budget Message "to fully fund ... *the approved early childhood operational plans,*" and replaced it with a limited commitment only to fund *"approved 'Abbott' preschool expansion"* with state appropriations. *Id.* at 426, 843 *A.*2d 338 (quoting Budget Message) (emphasis added by the Appellate Division). Having concluded that neither the Supreme Court nor the Legislature had mandated exclusive State funding of preschool programs in the Abbott districts, the Appellate Division affirmed the Commissioner and held that "local resources, if available, may be allocated for such purposes." *Id.* at 427, 843 *A.*2d 338. On March 22, 2004, the Districts petitioned this Court for certification of their consolidated appeals, which the Court granted on June 4, 2004. 180 *N.J.* 454, 852 *A.*2d 191.

### III.

### A.

The Districts advance two arguments in support of their contention that the State must fully fund approved preschool programs and that other district resources cannot be reallocated for that purpose. First, the Districts claim that the Appellate Division's decision conflicts with this Court's preschool mandates as set forth in its *Abbott* decisions, and second, they claim that the Appellate Division's decision undermines the Legislature's intent and direction in the FY03 Appropriations Act to provide full funding for preschool programs. We reject both claims, largely for the reasons expressed in Judge Fisher's Appellate Division opinion. In respect of the FY04 Appropriations Act it is clear from the enacted language that the Legislature intended PSEA awards to fund approved preschool expansion only. *See Millville,*

*supra*, 367 *N.J.Super.* at 426–27, 843 *A.*2d 338. Nothing more can be added on this subject. In respect of this Court's preschool mandates, we add only the following.

As the Appellate Division recognized, *Abbott* V accepted in substantial part the Commissioner's proposal for whole school reform, including preschool programming recommended by the education experts and endorsed by the Commissioner. 153 *N.J.* at 489–90, 710 *A.*2d 450. Although the implementation of whole school reform was the core constitutional remedy [4] mandated by the Court, early childhood education was incorporated into that remedy in recognition of its critical importance and its statutory underpinnings. *Id.* at 506–08, 710 *A.*2d 450; *N.J.S.A.* 18A:7F–16. As to funding, in *Abbott* II, and then in *Abbott* IV, the State had been required to provide the Abbott districts with state aid (above the amount generated by the local tax levy) for the per-pupil costs of kindergarten through twelfth grade at a level commensurate with the average per-pupil expenditures in the State's wealthiest districts (the parity remedy). *Abbott* II, 119 *N.J.* at 385, 575 *A.*2d 359; *Abbott* IV, 149 *N.J.* at 189, 693 *A.*2d 417. Yet, in *Abbott* V, the Court also recognized that additional monies might be needed for supplemental programs, including social services, security, technology education, and other school-specific programs. 153 *N.J.* at 512, 514, 517, 710 *A.*2d 450. On decisions related to that additional funding, we said:

> Not only must sufficient funds be provided for whole-school reform and for the additional or modified supplemental programs that are constituent parts of such reform, there must also be in place a clear and effective funding protocol. Consistent with zero-based budgeting, the Commissioner may, before seeking new appropriations, first determine whether funds within an existing school budget are sufficient to meet a school's request for a demonstrably needed supplemental program. Implicit in any determination that existing appropriations are sufficient is the condition that funds may not be withdrawn from or reallocated within the

---

[4] The constitutional remedies found in the *Abbott* cases are rooted in Article VIII, Section 4, Paragraph 1 of the New Jersey Constitution:

> The Legislature shall provide for the maintenance and support of a thorough and efficient system of free public schools for the instruction of all the children in the State between the ages of five and eighteen years.

whole-school budget if that will undermine or weaken either the school's foundational education program or already existing supplemental programs.

Underlying the Commissioner's proposal for whole school reform, early childhood programs, and supplemental programs, is a clear commitment that if there is a need for additional funds, the needed funds will be provided or secured.[5]

[*Id.* at 518, 710 *A.*2d 450.]

On the question of funding for half-day preschool for three- and four-year olds, we explained more particularly that "the Commissioner must ensure that such programs are adequately funded and assist the schools in meeting the need for transportation and other services, support, and resources related to such programs." *Id.* at 508, 710 *A.*2d 450.

█ A requirement that the Commissioner *ensure* adequate funding is not the same as a requirement that the Commissioner *provide* that funding. The question, then, is whether the Commissioner's approach to funding Abbott district preschool programs ensures that the Districts have what they need to provide a quality early childhood education for three- and four-year olds. The Districts point out that the funding formulas used to calculate both ECPA and PSEA awards result in amounts that are not aligned with the District's actual approved budgets. As a consequence, some districts receive more than the approved budget amounts and other districts, such as Phillipsburg, Millville, Pemberton, and Neptune, receive less than the approved amounts. On its face, that approach appears to make no sense—those districts that have received state aid in excess of their needs will be required to return that excess to the State, whereas districts with shortfalls will have to reallocate monies from other approved district programs to fund preschools.

Yet, in his Final Decision in these cases the Commissioner expressly and clearly accepted the responsibility

---

5 The principle "that if there is a need for additional funds, [they] will be provided or secured" would apply regardless of whether the budget is school-based or district-wide.

to ensure, with additional aid if necessary, that sufficient funds are available to the district to fully fund its preschool program, that is, to ensure that any gap remaining after receipt of statutory formula aids will be addressed by the State *to the extent that need exists* because funds otherwise available to the district are insufficient to fully support the approved program.

[*Phillipsburg, supra,* OAL Dkt. No. EDU 3423–03, slip op. at 17–18 (Commissioner).]

At oral argument, counsel for the DOE reaffirmed the Commissioner's responsibility to restore any Abbott district shortfalls unless the Commissioner is able to demonstrate that additional funding is unnecessary because the district has sufficient resources to cover all of its programming needs.

It matters little whether the monies initially reallocated by the districts are drawn from formula aids, local levies, or savings realized through efficiencies. Indeed, in the Court's discussion regarding sources of funding for supplemental programs in *Abbott* V, we determined that the Commissioner could look to the existing school budget in the first instance so long as reallocation would not "undermine or weaken either the school's foundational education program or already existing supplemental programs." 153 *N.J.* at 518, 710 *A.*2d 450. The preschool funding mechanisms challenged by Phillipsburg, Millville, Pemberton, and Neptune essentially track that approach.

### B.

We make one other observation about the Commissioner's approach to funding preschool programs in the Abbott districts. In *Abbott* VIII, as described above, the *Abbott* plaintiffs sought certain specific relief relating to early childhood education. They claimed then that the Commissioner "ha[d, among other things,] failed to comply with the Court's funding mandate in *Abbott* V, and ... *Abbott* VI." 170 *N.J.* at 540, 790 *A.*2d 842. At that time it appeared that neither the districts nor the DOE had properly evaluated the districts' preschool needs prior to or during the initial budget approval process. *Id.* at 556–58, 790 *A.*2d 842. We required the Commissioner to implement protocols for developing budgets "based not on arbitrary, predetermined per-student

amounts, but, rather, on a record containing funding allocations developed after a thorough assessment of actual needs." *Id.* at 559, 790 *A.*2d 842; *see supra,* 183 *N.J.* at 268, 872 *A.*2d 1052.

■ In an audit conducted by the Office of the State Auditor covering the Early Childhood Education Program during the period July 1, 2001 to February 28, 2003, the State Auditor reported that because of inadequate reporting, the actual costs of preschool programs could not be determined. Office of the State Auditor, Audit of the DOE Early Childhood Education Program 5, *available at* http://www.njleg.state.nj.us/legislativepub/auditor/34052state.pdf. The Auditor also found that the enrollment projections used by the districts to formulate preschool budgets were overstated (by nineteen percent in 2001–2002 and ten percent in 2002–2003). *Id.* at 6. The DOE response to the Auditor's Report indicated that a "procedure for reporting actual preschool program costs by the Abbott districts for comparison to budgeted amounts [had] already [been] established." *Id.* at 7. The parties have not suggested to the Court that their approved early childhood budgets are based on anything other than need, and so we have assumed that our direction in *Abbott* VIII has been followed and that the State Auditor's recommended controls are in place. The issue before us is simply whether Abbott district approved preschool budgets can be formula-funded up front with any shortfalls addressed during the school year through additional funding unless the Commissioner can demonstrate that monies not needed for other programs are available to the districts. Certainly, if the DOE by audit finds that a district has over-projected its preschool enrollment such that its DOE-approved early childhood funding exceeds the district's actual need, it may be the case that the preschool program, in fact, is not underfunded. *See Bd. of Educ. of the City of Passaic v. New Jersey Dep't of Educ.,* 183 *N.J.* 281, 283–84, 872 *A.*2d 1062, 2005 *WL* 1172482 (2005) (discussing over-projection of student enrollment in City of Passaic preschool program). We emphasize that in respect of any reallocation of resources by the district to cover the cost of shortfalls created by

formula-driven funding, the burden is on the Commissioner to prove that the reallocation will not compromise any of the district's educational programs. *See N.J.A.C.* 6A:24–7.1(b), (c).

## IV.

Because this matter was decided below on the global issue, that is, whether the Commissioner is required to provide full funding for preschool programs in the first instance, the record does not contain any information about the provision of additional aid to the districts with shortfalls, and the parties were unable to respond when we sought that information at oral argument. It is of some interest that the DOE argued before the OAL and the Commissioner that these matters were not ripe for adjudication because decisions about additional aid had not yet been made. The argument was rejected, however, and the matter proceeded on the global issue. We nonetheless uphold the State's funding scheme based on the Commissioner's commitment to address any shortfalls during the school year unless he can demonstrate that district funds not needed for other programs are available.

## V.

The decision of the Appellate Division is affirmed.

*For affirmance*—Chief Justice PORITZ and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA–SOTO, and Judge STERN (t/a)—7.