872 A.2d 1062

BOARD OF EDUCATION OF THE CITY OF PASSAIC, PASSAIC COUNTY, PETITIONER–APPELLANT, v. NEW JERSEY DEPARTMENT OF EDUCATION, RESPONDENT–RESPONDENT.

Argued October 27, 2004—Decided May 19, 2005.

*Richard E. Shapiro* argued the cause for appellant.

*Michelle L. Miller,* Deputy Attorney General, argued the cause for respondent (*Peter C. Harvey,* Attorney General of New Jersey, attorney; *Nancy Kaplen,* Assistant Attorney General, of counsel; *Allison Colsey Eck,* Deputy Attorney General, on the brief).

Chief Justice PORITZ delivered the opinion of the Court.

This case, like *Board of Education of the City of Millville v. New Jersey Department of Education,* 183 *N.J.* 264, 872 *A.*2d 1052, 2005 *WL* 1172506 (2005), decided today, concerns funding determinations of the Commissioner of Education (Commissioner) in relation to preschool programs required by our decision in *Abbott v. Burke,* 153 *N.J.* 480, 508, 710 *A.*2d 450 (1998) (*Abbott* V), and subsequently promulgated Department of Education (DOE or Department) regulations. Here, the City of Passaic Board of Education (Passaic or District) raises three issues—whether Abbott district preschool programs must be fully funded by the State; whether the Commissioner may require Passaic to reallocate undesignated general funds [1] to cover shortfalls in its preschool budget when the fund balance falls to 0.76 percent of the District's total budget as a result of the reallocation; and, whether the DOE may reduce state aid midway into the school year based on a per-pupil methodology.

---

[1] School districts maintain undesignated general fund balances that the DOE, after audit, has considered a source of monies available for reallocation. *N.J.A.C.* 6A:10A-7.1(d).

The first issue is resolved in *Millville, supra,* 183 *N.J.* at 276–80, 872 *A.*2d 1052, wherein we conclude that the Commissioner is required to ensure that the Abbott districts have sufficient resources to provide quality preschool programs for three- and four-year-old children, and that his approach to funding early childhood education does not violate that requirement. We will not repeat in this case the discussion in *Millville, supra,* regarding that issue, nor will we again review prior relevant opinions in the *Abbott v. Burke* cases or the applicable statutory and administrative funding mechanisms. *See id.* at 276–80, 267–71, 872 *A.*2d 1052. In respect of the District's claim relating to the reallocation of monies from its undesignated general fund, the District sought to withdraw that issue early in this litigation and has not presented argument on it before this Court. We therefore will not consider that issue. We address here the sole question whether the Commissioner's per-pupil methodology is reasonable under the circumstances.

## I.

On February 22, 2002, the DOE approved Passaic's initial amended early childhood budget for the 2002–2003 school year at $18,064,151 based on a projected enrollment of 1,917 three- and four-year-old children. A mid-year audit conducted in early 2003 revealed that the actual enrollment of preschool children in Passaic was only 1,038. The DOE therefore reduced the District's previously awarded Preschool Expansion Aid (PSEA) using a per-pupil calculation to establish a revised PSEA of $1,304,807.

By letter dated February 25, 2003, the DOE communicated to Passaic the amount of downward adjustment in the PSEA award.[2] The District subsequently revised its 2002–2003 preschool pro-

---

[2] We note that in its letter of February 25, the DOE used an incorrect student projection number to calculate the PSEA adjustment that was properly recalculated on March 21, 2003.

gram plan, which the DOE approved on April 25, 2003. The new approved preschool budget totaled $12,330,283 and was supported by $9,240,629 in Early Childhood Program Aid (ECPA), $1,304,807 in PSEA funding, and $627,684 in monies carried over from the previous year. To satisfy preschool budget demands for the remainder of the 2002–2003 school year, therefore, the District required an additional $1,157,163.

Passaic filed an appeal with the Commissioner claiming that the DOE had acted in an arbitrary and capricious manner in adjusting Passaic's PSEA award based on a per-pupil methodology. The Commissioner transmitted the appeal to the Office of Administrative Law on April 4, 2003. After two days of hearings, on June 25, 2003, the Administrative Law Judge (ALJ) who heard the matter issued an initial decision in which she concluded that the appeal should be dismissed. *Bd. of Educ. of the City of Passaic v. New Jersey Dep't of Educ.*, OAL Dkt. No. EDU 3424–03, slip op. at 8 (Office of Administrative Law Initial Decision). The ALJ found Passaic's challenge to the per-pupil calculation to be without merit. She concluded that the calculation produced a fair estimate of a district's budget needs based on increased or decreased enrollment during a school year, and dismissed as unworkable the alternative possibility of using actual costs to derive a more accurate adjustment to a PSEA award. *Id.* at 6.

On September 25, 2003, the Commissioner issued his Final Decision accepting the ALJ's findings and conclusions. *Bd. of Educ. of the City of Passaic v. New Jersey Dep't of Educ.*, OAL Dkt. No. EDU 3423–03, slip op. at 19 (Commissioner of Education, Sept. 25, 2003). He found that the Legislature had given him "the discretion to adjust preschool expansion aid based upon actual need." *Id.* at 5. Regarding the question whether his approach was reasonable, the Commissioner stated:

> In this case, the testimony reflects the preschool plan is based upon the projected costs required to provide preschool programs and services to the District's eligible universe of three and four year olds. The budget consists of fixed as well as recurring costs. A per pupil amount is arrived at by dividing the total budget by the number of students enrolled in the programs. The per pupil

cost is an estimate of how much it costs the District to educate an individual student in its preschool program. Petitioner's program did not enroll as many students as originally projected; thus, the Petitioner's preschool program did not expand as projected.

Contrary to Petitioner's assertions, utilizing the per pupil amount to both increase and decrease the preschool budget over the course of a school year is a fair estimate since it is based on the projected expenses of the entire program....

[A]ctual costs incurred cannot be accurately determined until the end of the school year when [the] final audit is prepared. In order to provide adjustments, both increases and decreases, in the current year, the Respondent and the District must use estimates in an attempt to accurately gauge the costs to be incurred, during the fiscal year.... The per pupil amount accounts for all of the budgeted costs, is uniformly applied and provides a methodology that should closely approximate the audited costs incurred in providing a preschool education to the District's eligible three and four year old population.

[*Id.* at 5–6.]

Passaic thereafter sought appellate review of the Commissioner's decision.

In an unpublished opinion, the Appellate Division held that the per-pupil methodology used to calculate the downward adjustments in the District's preschool budget was a proper exercise of the Commissioner's discretion. The panel observed that the Appropriations Act for Fiscal Year 2003, *L.* 2002, *c.* 38 (FY03 Appropriations Act), authorized the Commissioner to make "[a]ppropriate adjustments" to a district's PSEA award "based on actual need." Because the Legislature did not prescribe a method for determining those adjustments, the court accepted the per-pupil calculation "even though the method may not have perfectly ascertained a reduction based on 'actual need.' " The Appellate Division rejected Passaic's argument that the calculation improperly magnified savings derived from enrollment reductions because the District's budget included fixed costs that do not change in proportion to changes in enrollment. "While his methodology may not be perfect," the panel concluded, "the Commissioner nevertheless applied a reasonable method for making the appropriate adjustments required by the inaccurate assessment of the preschool enrollment for the 2002–03 school year."

## II.

Passaic argues that the per-pupil methodology used by the DOE inflated the District's savings after it experienced lower than anticipated enrollments in its preschool programs. When the DOE recaptured PSEA monies based on the per-pupil calculation, the District suffered a deficit because certain fixed costs were not reduced by the lower enrollments. As a result, the District contends, the per-pupil adjustments to its PSEA award caused preschool funding to fall below actual need in contravention of the Legislature's direction in the FY03 Appropriations Act.

As indicated earlier, the Court's *Abbott* decisions relevant to preschool funding are discussed in *Millville, supra,* 183 *N.J.* at 267–71, 872 *A.*2d 1052. Specifically, in *Abbott v. Burke,* 170 *N.J.* 537, 556–59, 790 *A.*2d 842 (2002) (*Abbott* VIII), the plaintiffs raised procedural and substantive issues related to the implementation of Abbott district preschool programming. The plaintiffs claimed that the DOE had "neither provided sufficient budgetary guidance to the districts, nor allocated funding based on actual need." *Id.* at 556, 710 *A.*2d 450. In their view, "the DOE ha[d] imposed upon [them] pre-established, arbitrary, 'per-student' funding amounts that [did] not take into account [the] real 'per-student' costs" of the preschool program. *Id.* at 557, 710 *A.*2d 450. Thus, for example, the DOE had approved multiple preschool funding proposals at $4,500 per student without reviewing program assessments or providing an explanation as to whether that amount was sufficient to cover program needs. *Ibid.*

We held in *Abbott* VIII that the districts' budget requests and the DOE's responses "must be developed and articulated with specificity," and, further, that preschool budget calculations "*must* yield funding decisions based not on arbitrary, predetermined per-student amounts, but, rather, on a record containing funding allocations developed after a thorough assessment of actual needs." *Id.* at 559, 710 *A.*2d 450. In *Millville, supra,* we have assumed that the districts' approved preschool budgets are prop-

erly prepared in the first instance, but have allowed state aid awards below the approved amount on the Commissioner's representation that the deficit will be later funded unless he demonstrates that monies can be reallocated within the district without detriment to other programs. 183 *N.J.* at 266, 872 *A.*2d 1052. In this case, more than halfway through the school year, the Commissioner sought to use a per-pupil calculation to reduce the District's PSEA regardless of the effect on the District's programs. Such an approach is acceptable only if the Commissioner affords the District an opportunity to present data on fixed costs that cannot be reduced, and an adjustment is made to the calculation taking into account those continuing expenses and bringing the overall PSEA recapture amount in line with actual need.

■ Our focus on actual need is also the focus of the FY03 Appropriations Act, which states:

> Payments of Abbott Preschool Expansion Aid shall be based on documented expansion of the preschool program. Upon the Commissioner of Education's request, "Abbott districts" will be required to provide such supporting documentation as deemed necessary to verify that the actual expansion in the preschool program has occurred in the 2002–2003 fiscal year. Such documentation may include enrollment and attendance data that may be subject to an audit. Appropriate adjustments to a district's Abbott Preschool Expansion Aid amount may be made by the commissioner based on *actual need.*
>
> [FY03 Appropriations Act, *L.* 2002, *c.* 38 (emphasis added).]

The FY03 Appropriations Act thus directed that in adjusting a district's PSEA award, the Commissioner was to take into account the district's "actual need." We do not believe that "actual need" should be construed to mean "approximate need."

■ In sum, we hold that adjustments to state aid formulas that are not calibrated with program costs cannot be made late in the school year unless there is a meaningful opportunity for the District to present information related to actual costs and the adjustment is then realigned with those actual costs.

## III.

The judgment of the Appellate Division is modified and, as modified, is affirmed.

*For affirmance as modified*—Chief Justice PORITZ and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA–SOTO and STERN (t/a)—7.

*Opposed*—None.